UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD STREET,

      Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

Civil Action No.  04-72866

HON.   NANCY G. EDMUNDS
U.S. District Judge
HON. R.  STEVEN WHALEN
U.S. Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff  brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for disability insurance benefits (DIB) and Supplemental Security Income (SSI)  under Titles II and XVI  of the Social Security Act. Both parties have filed summary judgment motions, and Plaintiff also filed a motion to remand pursuant to sentence four of 42 U.S.C. §405(g), all of which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  I recommend that Defendant's Motion for Summary Judgment be denied, Plaintiff's Motion for Summary Judgment and Motion to Remand under sentence four be denied, but that this case be remanded pursuant to the sentence six of 42 U.S.C. § 405(g).

-1-

## PROCEDURAL HISTORY

Donald Street applied for disability benefits (DIB) and Supplemental Security Income benefits (SSI) on February 28, 2002, alleging disability due to alcoholism and epilepsy as of February 2, 2002 (Tr. 40, 53). On September 3, 2003, ALJ Earl A. Witten presided over an administrative hearing at which Plaintiff, represented by attorney Milton Utter, testified (Tr. 347-375). Sandra Steele, Vocational Expert (VE) also testified (Tr. 376-381). ALJ Witten issued a decision on November 19, 2003, finding that Plaintiff retained the capacity for a range of unskilled, sedentary work (Tr. 34-35). On June 4, 2004, the Appeals Council denied review (Tr. 12-14). Plaintiff filed the present action on August 5, 2004.

### A.    Plaintiff's Testimony

Plaintiff, born July 9, 1959, testified that he completed tenth grade (Tr. 347). He indicated that he was a poor student, and attended special education classes in math and English (Tr. 348). He stated that he retained a current driver's license, but did not own a car or drive due to risk of experiencing a seizure while driving (Tr. 348). Plaintiff, 5'3" and one hundred and fifteen pounds, stated that he was left-handed (Tr. 348-349).

Plaintiff, divorced with no minor children, testified that for the past fifteen years, he had worked as a stock handler, performed press setup, worked in shipping and receiving, die cast, drove a fork lift, and made electric meters (Tr. 350, 371). He reported that he lost his previous two jobs after he suffered seizures at work (Tr. 353-354). He stated that he had lifted up to fifty pounds in his most recent job (Tr. 355).

Plaintiff indicated that he had experienced a seizure approximately two weeks before

-2-

the hearing (Tr. 359).  He stated that at the onset of a seizure, whoever was present would call an ambulance, but he disliked going to the hospital, stating that when the ambulance arrived he would "refuse them" (Tr. 360).

Plaintiff testified that he could care for his own personal needs (Tr. 361).  He reported that he retired at approximately 11:30 p.m. and arose at 5:00 a.m., stating that he slept restlessly (Tr. 361).  He reported that after getting up, he spent the next half hour helping his relatives get ready to go to work and school (Tr. 363).  He estimated that he spent one half hour to one hour a day performing household chores such as vacuuming and dishes (Tr. 363).  He stated that he napped for approximately half an hour four to five times a week (Tr. 362).  He testified that he watched between four and six hours of television each day (Tr. 363).

Plaintiff stated that he experienced difficulty holding an object as heavy as a gallon of milk, due to "dislocated shoulder[s]" that were "blown out of their sockets" during a seizure four years before (Tr. 364).  He denied any difficulty walking, but stated that due to shoulder pain, he could not perform "overhead" work (Tr. 365).  He indicated that he was "too hyper" to sit, stand, bend, squat for any length of time (Tr. 366).  He stated that he did not "do staircases," because climbing stairs made him "real lightheaded" and dizzy (Tr. 366).

Plaintiff reported that he experienced claustrophobia, and had sought mental health treatment for panic attacks (Tr. 366-367).  He stated that he had completed three separate rehabilitation programs for his alcohol abuse (Tr. 367).  He stated that he had been told by therapists that he had an anger problem (Tr. 367).  He described his childhood as "rough," stating that his father and older brother had physically and sexually abused him (Tr. 367).

In response to his attorney's questions, Plaintiff stated that he believed that his last time in rehab had been a "turning point" (Tr. 368). He explained that he was unable to perform repetitive work with his hands because he had suffered frostbite, resulting in finger numbness (Tr. 370).

He testified that he believed that his mother, who passed away three to four years before, came and talked to him as he slept, adding that he sometimes experienced sleeplessness for up to three days (Tr. 372). He stated that he believed that his mother told him that it was "time for [him] to go with her . . . [because] she honestly believes I might harm my Dad and my brother" (Tr. 372). He stated that he currently took Dilantin for seizures (Tr. 373). Plaintiff testified that his driver's license had been suspended in 1978 in an alcohol-related incident (Tr. 374). He admitted using illegal substances in "his early years" (Tr. 375).

## B. Medical Evidence

In March, 1997 Plaintiff underwent an EEG after the onset of a seizure (Tr. 129). The EEG showed normal results, however physician's notes indicate that the EEG did "not rule

out the possibility of [a] seizure disorder" (Tr 129). February, 2000 shoulder x-rays showed evidence of bilateral inferior dislocations (Tr. 199).  In January, 2002[1] Plaintiff sought medical treatment, reporting that he had been vomiting for three days (Tr. 134).  Plaintiff admitted to drinking one half pint to one pint of Seagrams each week (Tr. 134).  A. W. Dettman, D.O., recorded that he discussed with Plaintiff that his "main problem appeared to be alcohol abuse" (Tr. 134).  Notes from a later January, 2002 exam indicate that Plaintiff admitted continued alcohol abuse, stating that Zoloft  prescribed for his anxiety did not help his symptoms (Tr. 133).

In February, 2002 Plaintiff began taking Dilantin after passing out at work from a possible seizure (Tr. 131).  Notes from a March, 2002 exam state that Plaintiff suffered a relapse, consuming a large amount of alcohol (Tr. 132).

In April, 2002 S. L. Schuchter, M.D., examined Plaintiff on behalf of SSA (Tr. 135). Dr. Schuchter noted that Plaintiff had been seen at the University of Michigan, where surgery was recommended for both shoulders (Tr. 135).  Plaintiff admitted to intermittent alcohol binging (Tr. 135).  Dr. Schuchter concluded that Plaintiff experienced bilateral shoulder pain, neck pain, gastritis, and a history of seizures (Tr. 136).

In May, 2002 Plaintiff underwent a three day alcohol detoxification program.  His discharge summary stated that among other conditions, he experienced alcohol dependence, a history of grand mal seizures, and GERD (gastroesophogeal reflux disease) (Tr. 149).

---

[1]The ALJ's decision incorrectly dates this exam as occurring in January 2001, rather than 2002 (Tr. 28).

Hospital staff gave him a guarded prognosis, but stated that his outlook would improve with continued in-patient treatment (Tr. 150).   On June 2, 2002 Lois P. Brooks, EdD, FLP performed a mental evaluation on behalf of the SSA.   Dr. Brooks noted that Plaintiff reported physical  and sexual childhood abuse, telling her that he did not "have a future" (Tr. 156,160).  He admitted drinking a pint of rum the day before his examination and reported hallucinations of cats, dogs, and lizards in his home "when nothing was there." (Tr.156, 158). Dr. Brooks assigned Plaintiff a GAF of 40, stating that his prognosis was "poor"[2] (Tr. 160).

Also in June, 2002, Dr. Gary Ralph, D.O., completed two separate Psychiatric Review Technique Forms (PRTF) (Tr. 165-177, 183-196).  The first PRTF found Plaintiff disabled, stating that when the effects of alcohol were considered, Plaintiff met listing 12.09 (substance addiction disorders) (Tr. 173).  However, the second PRTF stated that absent alcohol abuse, Plaintiff could perform sedentary work (Tr. 165-196).   A Mental Residual Functional Capacity Assessment (MRFC) performed at the same time concluded that "without substance abuse," Plaintiff could perform unskilled work (Tr. 179, 181).         In September, 2002 Plaintiff entered the Salvation Army's Turning Point Program, spending sixteen days in a

---

[2]A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication ... or major impairment in several areas, such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ), 34 (4th ed.2000)

detoxification program (Tr. 202).  Therapist notes indicate that Plaintiff made "promising progress," recommending that Plaintiff pursue "individual counseling for grief and trauma resolution" (Tr. 202-203).

In September, 2003, David Dotson D.O., concluded that Plaintiff was disabled, due to an organic brain disorder, depression, schizophrenia, and parethesias of the hands due to frostbite (Tr. 221, 224).  Dr. Dotson also cited Plaintiff's shoulder pain and limited range of motion as contributing to his disability (Tr. 221, 224).  Dr. Dotson gave Plaintiff a "poor" prognosis (Tr. 223).

Also in September, 2003, Mental Health worker Heidi Lasser, M.A., noting that Plaintiff complained of depression and visual and auditory hallucinations, assigned Plaintiff a GAF of 35 (Tr. 209, 219).  She reported "it was difficult to determine at parts of the history, which parts were true, which parts were fabricated, if any, to attempt to be qualified for SSI. [Plaintiff] appeared to have a substance abuse problem . . ." (Tr. 209).

### C.   Vocational Expert

Sandra Steele, stating that she was a rehabilitation consultant, classified Plaintiff's most recent work in construction labor as unskilled at the medium level of exertion (Tr. 376-377).  The ALJ posed the following hypothetical question to the VE:

"Assume I find that [Plaintiff's] residual functional capacity [is] such that he has a maximum sustained exertional capacity to perform work which would allow him to lift ten pounds on occasion and five pounds on a routine basis, lifting to be done between waist and shoulder level, jobs should not involve climbing, no use of air or vibrating tools, no work in an unprotected heights or unprotected moving machinery, no requirement for overhead work, jobs should be considered simple, routine one-two step process jobs without mathematical computations involved. Given those

-7-

restrictions, would [Plaintiff] be able to do any of his past relevant work?"(Tr. 377).

The VE replied that such an individual  would be unable to perform his past relevant work, but could perform the work of a bench assembler (12,000 jobs), machine operator (6,000 jobs), packer or sorter (6,000 jobs), or visual inspector (2,200) (Tr. 378).  The VE stated that if the hypothetical included a prohibition on repetitive pushing or pulling, half of the machine operator jobs would be eliminated (Tr. 378).

The VE stated that if the additional restriction of no gripping or grasping were added to the hypothetical question, all of the above jobs would be eliminated, but that such an individual could perform the work of a dispatcher (1,000 jobs), information clerk (3,200 jobs), and security identification clerk (900 jobs) (Tr. 378-379).  She stated that if Plaintiff's testimony with respect to pain, discomfort, limitations, and frequency of seizure were wholly credible, he would be unable to perform gainful employment (Tr. 379).  She stated that her answers were consistent with the jobs as described in the Dictionary of Occupational Titles (DOT) (Tr. 379).

In conclusion, the ALJ asked if the VE's conclusions would be altered by limiting such an individual to limited contact with the public and co-workers (Tr. 381).  The VE stated that none of her original conclusions would be modified, but within the second set of jobs, the occupation of information clerk would be eliminated (Tr. 381).  She stated that her job findings represented the lower peninsula of Michigan (Tr. 381).

### D.    ALJ Decision

ALJ Witten concluded that Plaintiff was not entitled to a period of disability, finding that he "would not be disabled if he stopped using alcohol" (Tr. 34). Citing Plaintiff's medical records, he found that Plaintiff suffered from alcohol abuse; depressive disorder; posttraumatic stress disorder; seizure disorder; and a history of shoulder dislocations (Tr. 29). The ALJ concluded that Plaintiff's above impairments were considered severe, but did not "individually or in combination, meet or equal in severity, any impairment found in 20 CFR, Part 404 Subpart P, Appendix 1" (Tr. 29). The ALJ found that while Plaintiff was unable to perform his past work, absent alcohol abuse, his impairments prevented him from:

> " lifting or carrying over 10 pounds on occasion or more than 5 pounds frequently; climbing or performing overhead tasks; repetitive pushing or pulling, using air or vibrating tools; working around unprotected heights or dangerous moving machinery[.] In terms of limitations stemming from [his] mental impairment, [Plaintiff] has "mild" restrictions in activities of daily living (performs adaptive functions such as cooking, cleaning, shopping); "mild" difficulties in maintaining social functioning (communicates and interacts adequately with others, functions in social settings e.g., store clerks/church congregation, has few meaningful interpersonal relationships); and "moderate" deficiencies of concentration, persistence or pace in completing tasks in a timely manner (attends to personal finances, cognitive functions in terms of awareness, orientation, concentration, memories, fund of knowledge and simple calculation are essentially preserved). There are "no" documented episodes of decompensation in a work or work-like setting. As such, [Plaintiff] would have difficulty consistently carrying out complex or detailed instructions, and would be relegated to performing tasks of a simple, routine, one-two step variety. Accordingly, [he] has the residual functional capacity for a range of unskilled sedentary work"
> (Tr. 31-32).

The ALJ found that although Plaintiff's limitations prevented him from performing a full range of sedentary work, he could perform "a significant number of jobs in the regional

and national economy," such as bench assembler, machine operator, packager/worker, visual inspector, dispatcher, information clerk, security identification clerk, citing 28,300 of such jobs located in the lower peninsula of Michigan  (Tr. 34).   The ALJ found that Plaintiff's allegations regarding his limitations were "not totally credible to the extent that he claims to be disabled absent the effects of alcohol" (Tr. 34).   In support of his credibility determination, the ALJ cited the failure of EEG, x-ray, or clinical evaluations to "uncover profound pathology" (Tr. 31).  The ALJ further supported his finding by citing Plaintiff's ability to care for his personal needs, his housekeeping activities, and care of his children and grandchildren (Tr. 31).

## STANDARD OF REVIEW

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).   Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence

-10-

exists in the record to support a different conclusion. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).

In determining the existence of substantial evidence, it is not the function of this court to try cases de novo, resolve conflicts in the evidence, or decide questions of credibility. *Brainard v. Secretary of Health & Human Services,* 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). The substantial evidence standard "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen,* 800 F.2d at 545. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir. 1987); *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Plaintiff has the initial burden of establishing entitlement to benefits by proving the existence of a disability. *Tyra v. Secretary of Health and Human Services,* 896 F.2d 1024, 1028 (6th Cir. 1990). Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The mere existence of an impairment, even a severe one, will not entitle the claimant

to disability benefits unless the impairment prevents him from returning to his past work or any other substantial gainful activity existing in the national economy considering his age, education and work experience. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. § 404.1505. A claimant's subjective allegations of disabling symptoms are insufficient by themselves to support a claim for benefits, *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 713 (6th Cir. 1988), and the symptoms must be substantiated by some objective clinical or laboratory findings. *Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 519 (6th Cir. 1985).

In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) had a severe impairment; 3) had an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to his past relevant work; and 5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 416.920(a). The burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Cole v. Secretary of Health & Human Services,* 820 F.2d 768, 771 (6th Cir.1987); *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984)

## ANALYSIS

### A.    Hypothetical Question

Plaintiff argues first that the hypothetical question failed to properly account for his

mental impairments. *Plaintiff's Brief* at 3.  Contending that a Sentence Four remand is appropriate, he cites *Varley v. Commissioner,* 820 F.2d 777, 779 (6th Cir. 1987), maintaining that the ALJ's question and the RFC found in the administrative decision did not take into account his personality disorder as diagnosed by Dr. Brooks. *Id.*  Plaintiff also argues that the ALJ failed to assess his use of judgment and ability to respond appropriately to supervision, co-workers, and unusual work settings. *Id.* at 4.  Plaintiff also maintains that the ALJ failed to consider numbers 2 and 3 of the following four factors:

1.  Understanding, carrying out and remembering simple instructions.
2.  Use of judgment.
3.  Responding appropriately to supervision, co-workers and unusual work settings.
4.  Dealing with changes in a routine work setting.

*Id.*, 20 CFR 404.1521(b)[3]

Sixth Circuit case law supports Plaintiff's argument that a hypothetical question must reflect an individual's limitations. *See Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994), *quoting Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922,

---

[3]In its entirety, § 404.1521(b) reads as follows:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations;
(6)dealing with changes in a routine work setting.

927-28 (6th Cir.1987).  The court in  *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001), rejecting the notion that a hypothetical question must contain talismanic language, found that a question was sufficient provided that it encompassed the plaintiff's relevant limitations: "The ALJ went beyond  [a] simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment." *See Chafin v. Commissioner of Social Sec.,* 2005 WL 994577, 2, 4  (E.D. Mich.2005) (ALJ's hypothetical question addressed Plaintiff's mental deficiencies sufficiently by limiting him to "simple, unskilled work."  Further, although Plaintiff had "moderate" deficiencies of concentration, persistence, or pace he could nonetheless perform the work of an assembler, packager, inspector, and security monitor). *See also Lyons v. Commissioner of Social Sec.* 351 F.Supp.2d 659, 662 (E.D. Mich.2004) ("ALJ took into account [the][p]laintiff's depression . . . by including limitations within the hypothetical . . . limiting the possible jobs to simple, unskilled, and routine work" ).

In this case, whether or not the hypothetical question specifically used the term "personality disorder," it adequately accounted for the Plaintiff's psychological limitations based on the evidence before the ALJ at the time.  First, as discussed in more detail below, the ALJ modified his non-disability conclusion by adopting Dr. Ralph's finding that *absent the effects of alcohol abuse,* Plaintiff could perform sedentary work (Tr. 30-31).  Although Plaintiff argues that  the opinion of personality disorder  by Dr. Brooks stands independent of the effects of alcohol, the ALJ reasonably found, based on the material before him, that his alleged functional limitations appeared "overstated," and inconsistent with available evidence (Tr. 31).  Dr. Dettman  attributed Plaintiff's health issues to alcohol (Tr. 134).  Dr.

-14-

Brooks, who found that Plaintiff suffered from a personality disorder "not otherwise specified," also noted that Plaintiff had been drinking heavily the day before she examined him (Tr. 156). Although Plaintiff cites an October, 2003 examination which found that he suffered from an "antisocial personality disorder," his examiner noted that at the time of his examination, he had been abstaining from alcohol for only three weeks (Tr. 242).

Second, the ALJ properly acknowledged Plaintiff's emotional limitations by altering his hypothetical question to limit Plaintiff's contact with the public and co-workers (Tr. 381). The VE testified that if the hypothetical individual were subject to that additional limitation, he could still perform the work of a bench assembler, machine operator, packer, visual inspector, dispatcher, security identification clerk (Tr. 378-379).[4] Further, as discussed above, the ALJ adopted Dr. Ralph's conclusion, derived from Plaintiff's medical history, that absent the effects of alcohol, Plaintiff suffered from mostly *mild* limitations in the "B" criteria of listings (Tr. 193). The one exception, where Dr. Ralph found that he experienced *moderate* "difficulties in maintaining concentration, persistence of pace," was sufficiently acknowledged by the ALJ, who found that Plaintiff was limited to "simple, routine one-two step process jobs without mathematical computations involved." His findings harmonize with the requirement of *Smith, supra,* that the hypothetical accurately reflect Plaintiff's

---

[4]The ALJ's decision also included the one job that would be eliminated by limiting Plaintiff's contact with the public (Tr. 33). Whether the inclusion is deliberate or inadvertent, according to the VE's numbers, the information clerk jobs represent only 3,200 out of 28,300 positions that the ALJ found Plaintiff capable of in the State of Michigan and at best, represents harmless error. *See NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 1430, 22 L.Ed.2d 709 (1969) (the Court found that the harmless error rule is appropriate when "remand would be an idle and useless formality").

limitations (Tr. 377). Further, although the RFC did not include limitations on working with the public (see footnote 4), all but one of the seven jobs listed allowed Plaintiff to limit his access to the public and co-workers (Tr. 381).

### B.    Treating Physician

Plaintiff next argues that the ALJ failed to follow the treating physician rule set forth in 20 CFR 404.1527(d) by discounting Dr. Dotson's opinion that he was disabled. *Plaintiff's Brief* at 7-8.

In *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991) the court held that "it is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference." In *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004) the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.

Contrary to Plaintiff's argument, the administrative findings demonstrate that the ALJ properly stated his reasons for not giving Dr. Dotson's September, 2003 opinion controlling weight. Although Plaintiff cites 20 CFR § 404.1527(d) to support his contention that the ALJ erred in giving minimal weight to Dotson's opinion, the decision notes that Dr. Dotson, who made his findings the same month that he began seeing him, could not be accorded the

-16-

deference given to a treating physician (Tr. 32).[5]   Further, although Plaintiff relies on Dr. Dotson's December, 2003 opinion that he was disabled, the ALJ could not possibly have considered the December medical findings since he released his administrative decision an entire month earlier  (Tr. 35, 340).

Plaintiff also faults the ALJ for adopting the findings of Dr. Ralph, a non-examining and non-treating physician who found that absent alcohol abuse, he could perform unskilled, sedentary work.  *Plaintiff's Brief* at 7.  However,  medical opinions found elsewhere in the record support Dr. Ralph's conclusions.  In January, 2002 Dr. Dettman found that  Plaintiff's "main problem appeared to be alcohol abuse" (Tr. 134).  Although Dr. Brooks deemed Plaintiff's prognosis in June, 2002  "poor," her findings were undoubtedly colored by Plaintiff's admission that he had drunk an entire pint of rum the day before his examination (Tr. 156, 160).  Although ALJ cited results of a September, 2003 psychiatric exam which assigned Plaintiff a GAF of 35, noting that it did not discuss Plaintiff's alcohol abuse (Plaintiff admitted to drinking only once a week), the report stated that he had "hepatitis or liver problems," and experienced hallucinations and seizures - all of which could be reasonably attributed to his alcohol dependency  (Tr. 212-213).  Thus, the ALJ's use of Dr. Ralph's opinion that Plaintiff could perform sedentary work absent alcohol abuse is

---

[5]Under the heading "Length of the treatment relationship and the frequency of examination," 20 CFR § 404.1527(d)(2)(I) states that "[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."

supported by record evidence.

### C.  Sentence Six Remand

The Court notes that Plaintiff's motion for summary judgment requested a remand for further proceedings based on the above arguments , pursuant to Sentence Four, 42 U.S.C. § 405(g), which states that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  In contrast, Sentence Six of 42 U.S.C.A. § 405  states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." In *Melkonyan v. Sullivan,* 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991), *Id.,* at 97-99, 111 S.Ct. at 2163, the Court held that a Sentence Six remand (in which the district court retains jurisdiction) "does not attach to any substantive ruling but merely remands the matter for further review in light of newly discovered evidence which is to be considered by the administrative law judge and therefore does not constitute a 'judgment' from which appeal can be taken."

Plaintiff's request for a sentence four remand is intrinsically problematic, because it cites transcript material added to the record after the ALJ issued his decision on November 19, 2003 (Tr. 338, 340).  As discussed by Defendant, "this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth

sentence of 42 U.S.C. §405(g)." *Defendant's Brief* at 14, *citing Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993).  The *Cotton* court held that where the Appeals Council denies a claimant's a request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cotton* 2 F.3d at 695-96.

Therefore, this Court cannot grant Plaintiff sentence four relief based on material submitted after November 19, 2003.  However, under the plain language of §405(g),  the Court can properly grant a sentence six remand *sua sponte*, based on its finding that the post-decision material is both new and material.  The court in *Igonia v. Califano,* 568 F.2d 1383, 1387 ( D.C. Cir. 1977) held that "[w]hile a remand request is normally made by a party, there is no reason why a court may not order the remand *sua sponte*. All that the Act requires is 'good cause shown,' and we believe the patent conflict between the documents in question in this case is sufficient good cause for a remand."(internal citations omitted). *See also, Clark v. Callahan,* 1998 WL 512956, 1  (S.D.N.Y.,1998) (While regularly, a court cannot grant summary judgment *sua sponte*, without prior notice, in a social security context, "further notice to the parties was not required.").[6]

Under sentence six, the medical and counseling records submitted subsequent to the ALJ's decision are both new and material. Because the majority of the additional files were

---

[6]In a sentence six remand, of course, the Court is not granting summary judgment, but rather is merely remanding for further review. *Melkonyan v. Sullivan, supra.*  In addition, it should be noted that Defendant has presented thorough written and oral argument regarding sentence six.

not created until after November 19, 2003, good cause has been established for failure to submit them before the decision date. *See Cotton*, 2 F.3d at 696. In addition, the files contain unarguably new and non-duplicative information, and more fundamentally, are material to the administrative decision.

In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence. *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711 (6th Cir.1988). The new records meet that burden.

First, the ALJ, concluding that "the record documents a correlation between the [Plaintiff's] emotional problems and his drinking behavior," adopted the residual functional capacity of Dr. Ralph, who found first, that when considering the effects of alcohol, Plaintiff was disabled, but absent alcohol abuse, Plaintiff "was capable of performing unskilled work tasks on a sustained basis" (Tr. 29).[7] For the reasons set out in sections A. and B., the ALJ

_____

[7]Benefits under Title II and/or XVI of the Social Security Act were amended by Congress when it passed the Contract with America Advancement Act of 1996, which states in pertinent part:

> "An individual shall not be considered to be disabled for the purposes of this Title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."
> 42 U.S.C. § 423(d)(2)(C).

In response to this amendment, regulations were promulgated that set forth a "but-for" test to determine whether alcoholism or drug addiction would be a "contributing factor material" to a claimant's disability. *See Davis v. Apfel,* 133 F. Supp. 2d 542, 544 (E.D. Mich 2001). Regulation 404.1535(a) and 416.935(a) state that "*[i]f we find*

reasonably found alcohol abuse the "but-for" cause of his disability.

However, Plaintiff's progress notes dating from November, 2003 to April, 2004 contradict that conclusion.  Notes from an October 1, 2003 exam indicate that Plaintiff stopped drinking sometime in early September and  at the same time began taking Antabuse (Tr. 239).   Assuming, *arguendo*, that Plaintiff's October assessment, which included a diagnosis of "major depressive disorder, recurrent, severe with psychotic features," reflected the residual effects of his prior alcohol abuse, subsequent examinations indicate that even months after Plaintiff ceased drinking, he continued to experience  mental health disorders.[8] On November 14, 2003, his counselor  reported that he experienced a seizure during a session (Tr. 285).   On November 26, 2003 Plaintiff told his counselor that he had experienced fifteen seizures in the week before his appointment and had finally sought emergency room treatment (Tr. 279).  In December, 2003, he reported continued seizures (Tr.

_____

*that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability . . ." 20 C.F.R. §§ 404.1535(a) and 416.935(a)(emphasis added). Hence, if an individual is found to be disabled, and then the Commissioner determines that alcoholism and/or drugs contributed materially to that finding, that individual is barred from collecting disability benefits and/or supplemental income under the 1996 amendments.


[8]On April 28, 2004 Plaintiff relapsed, admitting to his counselor that he had stopped taking Antabuse for a few days, then had "a couple of drinks" with old friends (Tr. 244).  He indicated that he was resuming his Antabuse use.  Weekly counseling reports from November, 2003 to April, 2004 indicate that otherwise, Plaintiff remained alcohol free.  In early April, 2004, his counselor urged him to attend an Alcoholics Anonymous meeting "just to share with others how he is able to stay sober" (Tr. 248).

275).  In March, 2004, he reported that his sister continued to express concern about his apparently ongoing seizures (Tr. 250).

Moreover, Dr. Dotson's records from February, 2004 indicate that aside from the neurological problems caused by Plaintiff's prior alcohol use, he suffered from a seizure disorder (Tr. 337). While the Court cannot speculate as to the cause of Plaintiff's seizure disorder, the information submitted after November 19, 2003, offers the reasonable possibility that Plaintiff,  who reported that he was beaten regularly as a child, can attribute his seizure disorder to other causes.[9]

The import of these later records is that, contrary to the ALJ's decision, the vocational limitations stemming from the Plaintiff's seizure disorder remain even after he stopped drinking. In this regard, 20 C.F.R. § 404.1535(b)(1) is pertinent:

> "The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability *is whether we would still find you disabled if you stopped using drugs or alcohol*." (Emphasis added).

As stated above, the ALJ properly found that Plaintiff was not disabled based on the information submitted prior to his decision.  However, the new information casts doubt on his finding that absent alcohol abuse, Plaintiff was capable of gainful employment.  Under these facts, the case should be remanded under sentence six, so that the ALJ can revisit his disability determination in light of this new and material evidence.

---

[9]An online website offering information on seizures cites twenty-nine causes of seizures, including head injury, alcohol abuse, and panic attacks. http://www.medtronic.com

**CONCLUSION**

For the reasons stated above I recommend that Defendant's Motion for Summary Judgment be denied, Plaintiff's Motion for Summary Judgment and Motion for Sentence Four Remand be denied, but that this case be remanded for further administrative consideration of material submitted after the ALJ's decision, pursuant to the sixth sentence of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  August 12, 2005

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 12, 2005.

S/Gina Wilson
Judicial Assistant